VEETA F. REID AND ESTATE OF JOHNNY D. REID, DECEASED, VEETA F. REID, EXECUTRIX, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Reid v. Commissioner
Docket No. 27398-87
United States Tax Court
T.C. Memo 1989-294; 1989 Tax Ct. Memo LEXIS 306; 57 T.C.M. (CCH) 723; T.C.M. (RIA) 89294; June 19, 1989. Jack Bryant, for the petitioners. Steve W. Brower, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax for the calendar years 1981, 1982, and 1983, *307 in the amounts of $ 30,777.22, $ 17,051, and $ 2,164, respectively. After concessions by petitioners, the only issue remaining for decision is whether petitioner Veeta F. Reid is relieved from liability under section 6013(e) [1] with respect to the income tax resulting from respondent's determination that commodity future losses claimed as ordinary losses on the tax returns of Veeta F. and Johnny D. Reid for 1981 and 1982 were capital losses and that the long-term capital gain deduction claimed on their 1981 return with respect to the gain from sales of farm equipment and horses should be disallowed because the gain on these sales was ordinary income. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Veeta F. Reid resided in O'Brien, Texas, at the time of the filing of the petition in this case. Johnny D. Reid died prior to the filing of the petition and the petition for the Estate of Johnny D. Reid was filed by Veeta F. Reid as executrix. *308 Veeta F. Reid and Johnny D. Reid were husband and wife during the years 1981, 1982, and 1983. They filed a joint Federal income tax return on Form 1040 for each of these years. During the years 1981 and 1982 Mrs. Reid was a school teacher and also a part-time city clerk for the community of O'Brien, Texas. In addition to her teaching and her work as city clerk, she took care of the home in which she, Mr. Reid and their daughter lived. During the years 1981 and 1982, Mr. Reid was engaged in farming activities. His primary crop was cotton, but he also raised horses. On the Schedules F, "Farm Income and Expenses," attached to petitioners' [2] returns for 1981 and 1982, "Horse Farm" was listed as part of the farm activities. Mrs. Reid and her husband had two joint bank accounts during 1981 and 1982. One of these accounts was the account into which Mrs. Reid deposited her paycheck and on which she wrote checks to pay household bills or other amounts she spent. Mr. Reid also had signature rights on this account. The other account was the account that petitioners considered the farm account. This account was used for Mr. Reid's farming activities and Mrs. Reid never wrote a check *309 on this account. Mrs. Reid knew very little about the farming activities carried on by Mr. Reid. He had told her that he was investing in commodity futures, but he referred to his investments in commodity futures as "farm commodities." Mr. Reid had also told her the farm activities were losing money, but prior to his death she did not know the extent of the losses. Mr. Reid kept all of the records with respect to the farm activities and she knew nothing about the activities other than what he told her. When it was time to file their income tax returns for each of the years 1981 and 1982, Mr. Reid would accumulate the farm records which he kept in the form of invoices, receipts, and the like in his desk and take them along with Mrs. Reid's Forms W-2 to the person that the Reids engaged to prepare their income tax return. After the return was prepared, Mrs. Reid would sign it as would Mr. Reid. Petitioners' standard of living did not change in 1981 and 1982. Mrs. Reid received no lavish *310 gifts from Mr. Reid in these years or later years. Her only purchases during these years were those necessary to run the household and normal clothing for herself and her daughter. On the Schedule F, "Farm Income and Expenses," attached to petitioners' Form 1040 income tax return for 1981, an item of loss of $ 176,994 was shown under the designation "Commodity Hedging Farm Crops." Shown under this same designation on petitioners' 1982 return was a loss of $ 145,100. On petitioners' 1981 return on Schedule D under long-term capital gains and losses, petitioners included the gains and losses from sales of horses and used farm equipment. For the year 1981, the net amount of losses from commodity futures transactions reported on petitioners' return was accurate and supported by the records Mr. Reid kept. In this year, petitioners had a profit of $ 24,304.50 from cotton commodity futures transactions. They had a loss from futures transactions in T-bills of $ 17,120 and from "S-Francs" of $ 362.50, and a gain from commodity futures transactions in lumber of $ 414. The balance of the losses claimed on petitioners' tax return from commodity futures transactions were the net losses resulting *311 from commodity futures transactions in soybeans, pork bellies, wheat, hogs, cattle, corn, and oats. In 1982, petitioners had a loss from cotton commodity futures transactions of $ 51.32 and a loss from commodity futures transactions in T-bills of $ 2,470. The balance of the losses reported on petitioners' 1982 income tax return from commodity futures transactions were the net losses from commodity futures transactions in such items as soybeans, pork bellies, wheat, hogs, cattle, corn, and oats. Respondent in his notice of deficiency determined that the gains and losses from petitioners' commodity futures transactions in cotton were ordinary gains or losses from hedging, but that the remaining losses from the reported commodity futures transactions were capital gains or losses. Respondent determined that the net gain received by petitioners from the sales of horses and used farm equipment in 1981 was ordinary gain and not capital gain. OPINION Section 6013(e) [3] as applicable to the years here in issue provides that a spouse is relieved of liability under regulations prescribed by the Commissioner where: (a) a joint return has been made with the other spouse for a taxable year, *312 (b) on that return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (c) the other spouse establishes that in signing the return she did not know and had no reason to know that there was such a substantial understatement, and (d) taking into account all of the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for the taxable year attributable to such substantial understatement. *313 Grossly erroneous items are defined as "any item of gross income attributable to such spouse which is omitted from gross income" and "any claim of a deduction, credit, or basis by such spouse in an amount for which there is no basis in fact or law." Section 6013(e)(1)(A) and (B). Respondent in this case has conceded that petitioner, Veeta F. Reid, has met all of the requirements of section 6013(e), except the requirement that the substantial understatement of tax be shown to be attributable to grossly erroneous items. It is respondent's position that petitioners have failed to show that the deductions, the disallowance of which caused the substantial understatement of tax, had no basis in fact or law. A taxpayer in order to be relieved of liability under section 6013(e) must establish that all of the four requirements of that section have been met. One factor that must be shown is that there is a substantial understatement of tax attributable to grossly erroneous items of the other spouse. Where the items giving rise to the understatement of tax are deductions, the taxpayer must show that these deductions have no basis in fact or law. There is no definition in the statute *314 of "no basis in fact or law." Section 6013(e) was amended by the Tax Reform Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat. 801-802, effective for all years to which the Internal Revenue Code of 1954 applies, to include deductions, credits or basis in items for which a spouse is entitled to relief from tax. Prior to this amendment only income items had been subject to relief. The report of the House Committee, in commenting on the broadening of the statute to include deductions, gave as an example of a situation in which innocent spouse relief might be granted "where one spouse claims phony business deductions in order to avoid paying tax and the other spouse has no reason to know that the deductions are phony." [Supplemental Report of Comm. on Ways and Means, H. Rept. 98-432, (Pt. 2), on H.R. 4170 (Tax Reform Act of 1984), at 1502 (1984).] In , affd. , we held that a taxpayer had not made a showing that deductions were "grossly erroneous" by conceding the adjustments made by respondent in the deficiency notice. We pointed out in that case that the items there involved were *315 not "phony" deductions as referred to in the committee report and, therefore, there would have to be some showing made by the taxpayer of the lack of basis for the deductions in fact or law. In , we stated that a clue to the meaning of the words "no basis in fact or law" is found in the reference in the committee report to "phony" business deductions. We then stated: As we read the statute as a whole and its legislative history, a deduction has no basis in fact when the expense for which the deduction is claimed was never, in fact, made. A deduction has no basis in law when the expense, even if made, does not qualify as a deductible expense under well-settled legal principles or when no substantial legal argument can be made to support its deductibility. Ordinarily, a deduction having no basis in fact or in law can be described as frivolous, fraudulent, or, to use the word of the committee report, phony. Here, clearly the deduction had a basis in fact. Mr. Reid did invest in commodity futures contracts and his records supported in detail the exact amount of the claimed losses. He did lose the amount claimed *316 on the return to be lost on commodity futures transactions. Therefore, the claimed deduction had a basis in fact and was merely reported as an ordinary loss rather than a capital loss. Here, also, the deduction claimed was not "phony." To the extent that the commodity futures transactions were in farm commodities, there may have been some basis in law for an argument that the items were related to Mr. Reid's farm operation. In addition to cotton, Mr. Reid raised horses. The fact that petitioner has conceded that respondent's adjustments were correct does not amount to proof that no substantial legal argument could have been made with respect to deductions by a farmer of losses from trading in farm commodity futures being ordinary losses. In our view, petitioner has totally failed in this case to show that the commodity futures transaction losses were grossly erroneous items. It is not clear whether Mrs. Reid is contending that the adjustment made by respondent to treat the gains from the sales of horses and used farm equipment as ordinary income rather than capital gain results in an understatement of tax from a grossly erroneous item. Petitioners, on brief, make no mention of *317 this item. The argument concerns only the commodity futures losses. There is no evidence in the record as to this item other than the return on which the gain is reported as long-term capital gain and the notice of deficiency in which it is determined to be ordinary income. In any event, if Mrs. Reid has not conceded this item, we conclude that she has not shown it to be a grossly erroneous item. There was no change made by respondent in the amount of gain reported. The gain was merely treated as ordinary income instead of capital gain so that the capital gain deduction with respect to these sales provided for by section 1202(a) was disallowed. On the basis of this record, petitioner has failed to establish that the substantial understatement of tax is attributable "to grossly erroneous items" of Mr. Reid. Therefore, Mrs. Reid is not entitled to be relieved of liability for the tax with respect to the amount resulting from respondent's determination that the commodity futures transactions, except as to cotton, resulted in capital losses rather than ordinary losses in both 1981 and 1982 and his disallowance of that part of the capital gains deduction claimed on the joint return *318 in 1981 allocable to the gain on the sale of horses and used farm equipment. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioners as used herein refers to Veeta F. Reid and Johnny D. Reid, although because of his death prior to the filing of the petition, his estate is the joint petitioner in this case.↩
3. Section 6013(e) provides as follows: Sec. 6013(e). SPOUSE RELIEVED OF LIABILITY IN CERTAIN CASES. -- (1) IN GENERAL. -- Under regulations prescribed by the Secretary, (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement. (2) GROSSLY ERRONEOUS ITEMS. -- For purposes of this subsection, the term "grossly erroneous items" means, with respect to any spouse -- (A) any item of gross income attributable to such spouse which is omitted from gross income, and (B) any claim of a deduction, credit, or basis by such spouse in an amount for which there is no basis in fact or law. (3) SUBSTANTIAL UNDERSTATEMENT. -- For purposes of this subsection, the term "substantial understatement" means any understatement (as defined in section 6661(b)(2)(A)) which exceeds $ 500. (4) UNDERSTATEMENT MUST EXCEED SPECIFIED PERCENTAGE OF SPOUSE'S INCOME. -- (A) ADJUSTED GROSS INCOME OF $ 20,000 OR LESS. -- If the spouse's adjusted gross income for the preadjustment year is $ 20,000 or less, this subsection shall apply only if the liability described in paragraph (1) is greater than 10 percent of such adjusted gross income. (B) ADJUSTED GROSS INCOME OF MORE THAN $ 20,000. -- If the spouse's adjusted gross income for the preadjustment year is more than $ 20,000, subparagraph (A) shall be applied by substituting "25 percent" for "10 percent." (C) PREADJUSTMENT YEAR. -- For purposes of this paragraph, the term "preadjustment year" means the most recent taxable year of the spouse ending before the date the deficiency notice is mailed.↩